UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHELE M. URABECK,

               Plaintiff,

   v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

               Defendant.

CASE NO. C17-5048-BAT

**ORDER REVERSING AND REMANDING**

Michele M. Urabeck appeals the ALJ's order finding her not disabled. The ALJ found bipolar disorder is a severe impairment but that Ms. Urabeck retains the residual functional capacity ("RFC") to perform work at all exertional levels, subject to other limitations. The ALJ found Ms. Urabeck cannot perform her past work but is not disabled because she can perform other jobs in the national economy. Tr. 15-25. The ALJ's decision is the Commissioner's final decision because the Appeals Council denied review. Tr. 1-6.

Ms. Urabeck contends the ALJ misevaluated 1) her RFC; 2) the medical evidence; 3) certain medical opinions; 4) the lay testimony; 5) her testimony; and 6) that the ALJ asked the vocational expert questions that failed to include all of her limitations. Dkt. 11 at 1-2. She argues these errors require the case be remanded for further proceedings. Dkt. 11 at 18.

As discussed below, the Court REVERSES the Commissioner's final decision and

ORDER REVERSING AND REMANDING - 1

REMANDS the case for further proceedings under sentence four of 42 U.S.C. § 405(g).

## DISCUSSION

**A.     The ALJ's Consideration of Bipolar Disorder**

Ms. Urabeck's opening brief first recites her views of bipolar disorder. Dkt. 11 at 3-4. The recitation does not cite to the record. The Court therefore declines to rely upon it to determine whether remand is proper because it is extra-record evidence which could have been presented before the Commissioner's final decision. *See e.g. Bruton v. Massanari,* 268 F.3d 824, 827 (9th Cir. 2001).

Ms. Urabeck next argues the ALJ failed to accurately account for all of the limitations described in medical records from Greater Lakes Mental Health ("GLMH"), Dkt. 11 at 5, and improperly focused on her ability to care for two rabbits, make meals, shop, do laundry, drive, and handle her savings account. *Id.* at 7. These arguments challenge the ALJ's decision to discount Ms. Urabeck's testimony. Tr. 21.

The ALJ found Ms. Urabeck "not as limited as she alleged" for two reasons. *Id.* First, the ALJ found "though the claimant's manic episodes are documented," "I note the claimant was also described with a normal presentation thoughout the record as well." *Id.* The ALJ supported the finding by referring to portions of the GLMH record between July 2012 and January 2015. *Id*. Ms. Urabeck contends the ALJ was impermissibly selective, focusing only on the portions of the record showing her good days, and ignoring bad days when she functioned poorly. Dkt. 11 at 5-6. In specific, she argues the ALJ provided "minimal citations" to the record and "to the extent there was any discussion about treatment records from GLMH, they were taken out of context." *Id.* at 5. The Commissioner defends the ALJ arguing an ALJ "need not discuss everything he

considered," Dkt. 12 at 8, and that the ALJ reasonably found the medical record undercut Ms. Urabeck's claims. *Id.* at 6-9.

The Court must consider the entire record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). Hence, the court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). Here, the GLMH records upon which the ALJ relied shows Ms. Urabeck's functionality ebbs and flows. There are times, as the ALJ notes, when Ms. Urabeck appears to function at a higher level than she claims. But there are also times when she functions quite poorly. The ALJ's conclusion that the GLMH records undercut Ms. Urabeck's testimony would be reasonable if Ms. Urabeck's symptoms were either very mild, or if they were very infrequent. The record however paints quite a different picture.

The record establishes Ms. Urabeck has extended periods in which she functions very poorly. For example, the ALJ found Ms. Urabeck was "noted as being pleasant and cooperative, as being well-oriented, as having normal eye contact, as having normal thoughts, and with a normal mood and affect. (Exhibits 6F/9; 11F/7, 9." Tr. 21. However, Exhibit 6F/9 states:

> The patient is a 45yo woman who presents acutely anxious and with pressured speech due to what seems like several concerns initially but ultimately seems to be related to insomnia as she has not slept in six days. It is difficult to get a reliable history from the patient as she seems to have numerous concerns including what she believes is injury to her tongue from brushing too hard as well as a vague chest discomfort and redenies since she was outside in the sun for several hours. She attributes her severe anxiety to these concerns and seems rather fixated on concerns of a 'blood infection' preventing her from sleeping.

Tr. 481. Exhibit 11F/7, noted Ms. Urabeck reports getting worse; has not noticed improvement in mood stability; is concerned about a toothbrush that broke off in her tongue and getting plastic

ORDER REVERSING AND REMANDING - 3

spread though her body. The medical note also indicated Ms. Urabeck's parents stated she "has been quite manic over the past few weeks." Tr. 697. Exhibit 11F/9 noted how Ms. Urabeck's providers discussed with her her current manic behavior and flight of ideas, and how Ms. Urabeck needed to get a mental evaluation immediately or go to the emergency room. Tr. 699. These records show that despite Ms. Urabeck's ability to have normal eye-contact and being well-oriented, her medical providers noted significant mental health problems.

Other records from GLMH also show while Ms. Urabeck may one month present as appropriately dressed and groomed, and have coherent speech, and say that things are "going well," Tr. 532, she presents over the next few months as "hypomanic and disorganized; exhibit attention, concentration and memory difficulties; have labile, agitated and elevated affect; have delusional thought content; exhibit tangential though process and be difficult to redirect, and have impaired insight and judgment. Tr. 526.

In sum, the ALJ's finding that the GLMH medical record undercuts Ms. Urabeck's testimony is not supported by substantial evidence. The record shows Ms. Urabeck's bipolar disorder causes her to swing from periods of relative stability to extended manic periods in which she suffers significant symptoms.

The ALJ also discounted Ms. Urabeck's testimony on the grounds that she "is able to care for her pet rabbits, prepare meals, do laundry, buy groceries, and handle a savings account. Tr. 21. The ALJ found these activities are indicative of the ability to perform simple, routine and repetitive tasks with no contact with the public, only occasional co-worker contact and no team work. *Id.* The ALJ erred. Daily activities that are transferrable to a work setting may be grounds for an adverse credibility finding. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But daily activities that do not contradict a claimant's other testimony or meet the threshold for

ORDER REVERSING AND REMANDING - 4

transferrable work skills cannot form the basis of an adverse credibility determination. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). Here there is nothing indicating Ms. Urabeck's activities are transferrable to a work setting or that the activities directly contradicted Ms. Urabeck's testimony. Additionally, an ALJ may not penalize a claimant for attempting to live a normal life in the face of her limitations. *Id.* Here, Ms. Urabeck's activities are minimal—eating, bathing, cooking, buying groceries, taking care of a couple rabbits and going to church. To reject her testimony and conclude she can perform work based on these minimal activities would impermissibly penalize her for attempting to lead a normal life.

**B.     Medical Opinions**

Ms. Urabeck contends the ALJ erroneously rejected the opinions of examining psychologist Alysa Ruddell, Ph.D., and treating counselor Tanya Larson, M.A. The ALJ was required to provide specific and legitimate reasons to discount Dr. Ruddell's opinion, and germane reasons to discount Ms. Larson's opinion. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

   *1.     Dr. Ruddell*

Dr. Ruddell opined Ms. Urabeck is moderately limited in her ability to work without special supervision; make simple work decisions; be aware of normal hazards and ask simple questions; communicate effectively; and set realistic goals. Tr. 413. The doctor also opined Ms. Urabeck was markedly limited in her ability to understand, persist, and remember detailed tasks; learn new tasks; maintain appropriate behavior in the workplace; adapt to changes in the work setting; and compete a work day without interruptions from psychological symptoms. *Id.*

The ALJ rejected Dr. Ruddell's opinion finding them "inconsistent with her own observations of the claimant whom she described as presenting with a normal appearance, with

normal attitude and behavior, with good eye-contact, with normal speech." Tr. 22. The ALJ also found Ms. Urabeck could repeat a five digit span forward and three digit span backward, could spell world forward and backward and could follow a three-step command. *Id.* Substantial evidence does not support the ALJ's finding. Dr. Ruddell's evaluation contains numerous findings that support her opinion about Ms. Urabeck's limitations, which the ALJ did not address. The doctor noted Ms. Urabeck presented as depressed, anxious and paranoid. Tr. 414. Hence despite Ms. Urabeck's good eye-contact, appearance and behavior, Ms. Urabeck presented as suffering from significant mental illness. Dr. Ruddell also noted Ms. Urabeck's orientation was "impaired to place," and that her memory was impaired as to her personal history. *Id.* The doctor found Ms. Urabeck performed memory digit tests in the normal range, but that Ms. Urabeck demonstrated other memory problems, i.e., Ms. Urabeck "struggled to recall dates and events" about her personal history. *Id.* Dr. Ruddell also noted Ms. Urabeck had impaired abstract thinking based on her answer to the meaning of a proverb and that her ability to concentrate was diminished based on her performance on the serial 3 test (directions had to be given twice, it took 51 seconds to complete the test, and there were two errors). *Id.*

The Court accordingly rejects the Commissioner argument that it was reasonable for the ALJ to conclude Dr. Ruddell's "benign findings" were inconsistent with her opinions that Ms. Urabeck has numerous marked and severe limitations, and concludes the ALJ's finding is not supported by substantial evidence. Dkt. 12 at 5.

### *2. Ms. Larson*

In 2015, Ms. Larson opined Ms. Urabeck had significant deficits in her ability to sustain concentration, interact socially and adapt to demands of a workplace. Tr. 728-29. The ALJ found that although Ms. Larson's opinion is based upon a "treating relationship," "I find the claimant is

able to function quite well despite her mental health issues. For example, she reported that she is able to care for her pet rabbits, she is able to prepare her own meals, she is able to do laundry, and that she is able to go grocery shopping." Tr. 21-22.

These activities are not inconsistent with Ms. Larson's opinions about Ms. Urabeck's specific workplace limitations. They reveal little about Ms. Urabeck's capacity to perform gainful work because they are not work related activities. Further the activities do not specifically contradict Ms. Larson's opinions. Ms. Larson never opined Ms. Urabeck could not make food, care for her pets, wash her clothes and shop for groceries. Rather Ms. Larson opined Ms. Urabeck had no limitations on the ability to recall locations, understand instructions, or carryout short and simple instructions. Tr. 728. These opinions are consistent with Ms. Urabeck's ability to care for her pets, buy food and wash her clothes.

Additionally, the activities upon which the ALJ relied do not address Ms. Larson's opinion that "Clmt experiences episodes of emotional lability, delusional and disorganized thinking which would preclude her from working well with others or attending work related responsibilities effectively. These episodes appear to occur about every 4-6 weeks as observed by the clinician." Tr. 730. This opinion indicates that while Ms. Urabeck may periodically function at a higher level, i.e. shop, cook, and care for rabbits, she also suffers regular episodes in which she is delusional and disorganized. In short, the Court concludes that substantial evidence does not support the ALJ's determination that Ms. Larson's opinion is inconsistent with Ms. Urabeck's activities.

### 3. *State Agency Reviewing Medical Consultants*

Ms. Urabeck suggests the ALJ improperly gave too much weight to the opinions of reviewing doctors Rita Flanagan, Ph.D., and Vincent Gollogly, Ph.D. Dkt. 11 at 11. Because the

ORDER REVERSING AND REMANDING - 7

ALJ erred in rejecting the opinions of Dr. Ruddell, the Court need not address Ms. Urabeck's contention at this point. The ALJ may reassess the reviewing opinions on remand as appropriate.

**C.     Lay testimony**

Ms. Urabeck's family, and friends testified Ms. Urabeck, hallucinates; is delusional; engages in bizarre behavior, irrational communication and destructive behavior; is aggressive; has memory problems and "cycles between normal behavior and then she will decline during manic episodes." Tr. 23 (referencing Tr. 215-24, 223, 289-303, 374-77). Ms. Urabeck's former employer testified Ms. Urabeck had difficulties relating and establishing relationships with clients and other employees and was overwhelmed working as a receptionist. *Id.* The ALJ discounted the lay testimony as "not entirely consistent with the record as a whole" noting Ms. Urabeck is independent in self-care; she can make meals and do household chores, she can drive and she can go shopping. Tr. 23. As discussed above, Ms. Urabeck's minimal daily activities do not undermine the severity of her mental health symptoms. The ALJ's analysis also disregards the medical evidence that Ms. Urabeck's symptoms swing up and down. The lay testimony is consistent with that evidence in that Ms. Urabeck's father stated that his daughter cycles between normal behavior and decline during manic episodes. The Court accordingly concludes the ALJ's determination is not supported by substantial evidence.

**D.     Step Five Findings**

Ms. Urabeck argues the ALJ erred at step five by making findings that did not include all of her limitations. *See* Dkt. 11 at 17-18, Dkt. 15 at 7-8. As the ALJ erred in assessing Ms. Urabeck's testimony, the medical and other source evidence, and the lay testimony, the ALJ should revisit step five on remand.

**CONCLUSION**

The Court **REVERSES** the Commissioner's final decision and **REMANDS** the case for further proceedings under sentence four of 42 U.S.C § 405(g). On remand, the ALJ shall reassess Ms. Urabeck's testimony, the lay testimony, and the opinions of Dr. Ruddell, and Ms. Larson. The ALJ shall develop of the record and reassess Ms. Urabeck's RFC as appropriate, and proceed to step five.

DATED this 10th day of July, 2017.

BRIAN A. TSUCHIDA
United States Magistrate Judge